IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 12-cv-03235-REB-BNB

AURORA COMMERCIAL CORP.,

Plaintiff,

v.

PARAMOUNT RESIDENTIAL MORTGAGE GROUP, INC.,

Defendant.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on **Plaintiff's Motion to Enforce Settlement** [Doc. # 48, filed 2/18/2014] (the "Motion to Enforce"). I held an evidentiary hearing on the Motion to Enforce this morning and made findings and conclusions, which are incorporated here. I respectfully RECOMMEND that the Motion to Enforce be GRANTED.[1]

A settlement agreement is a contract between the parties. Citywide Bank of Denver v. Herman, 978 F. Supp. 966, 977 (D. Colo. 1997). The law favors compromise and settlement, and settlement agreements will be enforced. City & County of Denver v. Adolph Coors Co., 813

---

[1] Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dept. of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

F. Supp. 1476, 1479 (D. Colo. 1993). A trial court has the power summarily to enforce a settlement agreement entered into by the parties where, as here, the litigation remains pending before it. United States v. Hardage, 982 F.2d 1491, 1496 (10th Cir. 1993).

The court must apply state contract law to issues involving the formation, construction, and enforcement of a settlement agreement. United States v. McCall, 235 F.3d 1211, 1215 (10th Cir. 2000). The parties agree that Colorado law applies here. Under Colorado law, a settlement agreement does not have to be in writing to be enforced, Citywide Bank, 978 F. Supp. at 977; DiFrancesco v. Particle Interconnect Corp., 39 P.3d 1243, 1248 (Colo. App. 2001), but its terms must be clear, unambiguous, and capable of enforcement. City & County of Denver, 813 F. Supp. at 1479. "Unless the words used by the parties to express their agreement are found to be ambiguous in some material respect, the court should give them legal effect according to their plain, ordinary and popular meaning." Florom v. Elliott Mfg., 867 F.2d 570, 575 (10th Cir. 1989).

Where, as here, there are disputed issues of material fact concerning the existence or terms of a settlement agreement, the court must hold an evidentiary hearing in order to resolve the disputed issues of fact. Hardage, 982 F.2d at 1496.

The Colorado Supreme Court articulated the law applicable to the determination of the existence of an enforceable agreement in I.M.A., Inc. v. Rocky Mountain Airways, Inc., 713 P.2d 882, 888 (Colo. 1986):

> In order to establish the existence of a contract, the evidence must show that the parties agreed upon all essential terms. The parties' agreement is evidenced by their manifestations of mutual assent. Furthermore, evidence of the parties' conduct, their oral statements and their writings, and other evidence illuminating the circumstances surrounding the making of an agreement are

>admissible to clarify the intent and purpose of the parties.

(Internal citations omitted.)   The fact that the parties recognize that there would be a subsequent and more formal writing of their agreement does not foreclose a finding that they entered into an enforceable contract:

>The mere intention to reduce an oral or informal agreement to writing, or to a more formal writing, is not of itself sufficient to show that the parties intended that until such formal writing was executed the parol or informal contract should be without binding force.

Id. (internal citations omitted).

In addition, a party arguing that it did not intend to be bound by a settlement agreement until "a formal document is executed" bears the burden of establishing that fact:

>[T]he party arguing that the parties intended not to be bound until the execution of a formal writing has the burden of proving either that both parties understood they were not to be bound until the executed contract was delivered, or that the other party should have known that the disclaiming party did not intend to be bound before the contract was signed.

City & County of Denver, 813 F. Supp. at 1481 (internal quotations deleted).  A party who knowingly and voluntarily authorizes the settlement of his claims cannot avoid the terms of the settlement simply because it has changed its mind.  Woods v. Denver Dept. of Revenue, 45 F.3d 377, 378 (10th Cir. 1995).

The parties are sophisticated business entities with a long-standing relationship.  Here, the evidence establishes that on Saturday, January 25, 2014, Aurora Commercial Corp. ("ACC") sent an email to Paramount Residential Mortgage Group, Inc. ("Paramount"), stating:

>[T]his is to confirm our discussion this afternoon. [ACC] agrees to settle its claims against [Paramount] and provide a global release of all Aurora Commercial Corp and Aurora Loan Services claims

> in exchange for a $80k lump sum payment. Please confirm your agreement to these terms.

Ex. 3.[2] The agreement was conditioned on "final approval from [ACC] management." Id. Paramount responded by email the same day, stating that it "is agreeing to the terms outlined in your email." Ex. 5. The undisputed evidence is that ACC management gave final approval for the settlement on Monday, January 27.

The parties agree that any informal agreement evidenced by the emails was to be reduced to a more formal writing. Paramount disputes that the emails are sufficient to constitute a binding agreement, however, on three grounds: (1) ACC's statement that the settlement was conditioned on the final approval of its management; (2) agreement was not reached on all essential terms, pointing particularly to the fact that the emails do not establish the date for payment or the scope of the global release; and (3) that it was customary for ACC and Paramount to document previous settlements with formal written agreements.

Although ACC conditioned the settlement on final management approval, the undisputed evidence is that the approval was promptly received. I am not persuaded by Paramount's argument that the agreement, promptly approved by ACC's management, was vitiated by ACC's failure to notify Paramount of that approval.

The Tenth Circuit Court of Appeals has identified "two essential elements of a settlement agreement: (1) exchange of money, and (2) a release." Gates Corp. v. Bando Chemical Industries, Ltd., 2001 WL 135686 *2 (10th Cir. Feb. 16, 2001). The circuit court reasoned:

> The purpose of the [Memorandum] is to settle this case. That

---

[2]Reference is to the exhibits admitted into evidence during the hearing on March 17, 2014.

>     means that it must dispose of all claims. . . . The [Memorandum]
>     need not determine all issues that may arise between these parties
>     in perpetuity.

Id. In the Gates case, the circuit court placed importance on the fact that at least one party had begun performance under the settlement agreement. In this case, I find that Paramount, its later protestations notwithstanding, commenced performance under the settlement agreement memorialized in the emails by cancelling an important deposition scheduled for January 27, 2014. Specifically, Paramount's counsel wrote to plaintiff's counsel on Saturday, January 25, the same day the parties exchanged emails containing the terms of the settlement, stating: "David, I'm sure that you [sic] aware but in case, I've been informed by my client that the parties have reached a settlement. Therefore, no deposition on Monday." Ex. 4.

Paramount's argument that the time of payment is an essential term to which the parties failed to agree lacks merit. The evidence establishes that the parties discussed a lump sum payment, to which they eventually agreed, or a larger payment to be completed within 90 days. I find that the parties agreed that a lump sum payment was required within a reasonable time, and less than 90 days. That is sufficiently specific as to be readily enforceable. Similarly, I am not persuaded by Paramount's argument that the terms of the release were not sufficiently clear, unambiguous, and capable of enforcement. The parties agreed to a global general release. That is sufficiently specific, and the parties indicated their intention to be bound.

Finally, Paramount points to its customary practice of documenting previous settlements with ACC in formal written agreements as evidence that it did not intend to be bound by the informal emails . The argument goes too far. Although it may be true that earlier settlements were formally documented, that does not establish that underlying informal agreements were not

independently enforceable had the parties been unable to agree on non-essential terms eventually contained in the formal agreements. In essence, Paramount's argument would swallow the long-established Colorado rule that the mere intention to reduce an informal agreement to writing is not of itself sufficient to establish that the informal contract is not binding. I.M.A., 713 P.2d at 888.

Finally, I am persuaded that as a result of events occurring on January 27, 2014, Paramount simply changed its mind about the desirability of the settlement it had reached with ACC. Specifically, on January 27 the district judge here issued an opinion in a similar action which was favorable to arguments Paramount now makes in its motion for summary judgment filed on January 31, 2014. As ACC's counsel explains it:

> [O]n January 31, 2014, Defendant filed its Motion for Summary Judgment wherein Defendant cites to this Court's January 27, 2014 ruling in *Lehman Brothers Holdings, Inc. v. Universal American Mortgage Co.*, 2014 WL 292858 (D. Colo. Jan. 27, 2014) to support Defendant's newly asserted argument that Plaintiff's claims in the action are barred by the applicable statute of limitations.

Affidavit of David S. Canter [Doc. # 48-1] at ¶12. Significantly, Paramount admits that it was aware of the district judge's decision in the Lehman Brothers case throughout the relevant time period, stating:

> Having never been party in this case to anything like a final, comprehensive and binding settlement, [Paramount] was fully entitled to choose the alternate route of pursuing its meritorious motion for summary judgment. The fact (pointed to in Plaintiff's motion) that the Court had in the interim granted summary judgment to another litigant making a legal argument that [Paramount] had long planned to make in its own case does not somehow invalidate [Paramount's] legitimate exercise of its rights under the applicable factual circumstances.

Response [Doc. # 53] at p. 4.  A party cannot avoid the terms of a valid settlement simply because it has changed its mind.  Woods, 45 F.3d at 378.

I respectfully RECOMMEND:

(1)     The Motion to Enforce [Doc. # 48] be GRANTED; and

(2)     The case be dismissed with prejudice subject to the lump sum payment of $80,000 from Paramount to ACC and the delivery to Paramount of a general release of all claims from Aurora Commercial Corp. and Aurora Loan Services.

Dated March 17, 2014.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge